1
2
3
4

# UNITED STATES DISTRICT COURT

5

## NORTHERN DISTRICT OF CALIFORNIA

6
7

**HOWARD HERSHIPS,**

CASE NO. 17-cv-00473-YGR

8

Plaintiff**,**

9

vs.

**ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS**

10

**TANI CANTIL-SAKAUYE, ET AL.,**

Re: Dkt. Nos. 23, 29

11

Defendants**.**

12
13

Plaintiff brings this action against defendants Tani Cantil-Sakauye in her capacity as the

14

Director of the California Judicial Council and Jean Shiomoto in her capacity as the Director of

15

the California Department of Motor Vehicles, alleging the violation of his civil rights in

16

connection with the suspension of his driver's license. (Dkt. No. 17, "FAC.")  Plaintiff appears to

17

bring the following claims against defendant Cantil-Sakauye only:  (i) violation of due process

18

clause of the Fourteenth Amendment and (ii) violation of the excessive fines clause of the Eighth

19

Amendment.  With regard to defendant Shiomoto only, plaintiff alleges that her suspension of his

20

driver's license for failure to pay his fines is in clear violation of clearly established federal law.

21

Now before the Court are defendants' motions to dismiss the complaint pursuant to Federal

22

Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to

23

state claim.  Specifically with regard to defendants' Rule 12(b)(1) motion, defendants argue that

24

the Court lacks jurisdiction for the following reasons:  (i) the *Rooker-Feldman* doctrine; (ii)

25

*Younger* abstention; and (iii) the Eleventh Amendment.  Additionally, defendant Cantil-Sakauye

26

claims that she has absolute immunity, and defendant Shiomoto claims the California litigation

27

privilege bars the instant action.

28

1    Having carefully considered the pleadings and the papers submitted, and for the reasons set

2    forth more fully below, the Court **GRANTS** defendants' motion and **DISMISSES WITH PREJUDICE**

3    plaintiff's action.  Because the Court finds that dismissal is appropriate under Rule 12(b)(1), the

4    Court does not address below defendants' motions pursuant to Rule 12(b)(6) for failure to state a

5    claim.

6    **I.    REQUESTS FOR JUDICIAL NOTICE**

7        The parties have filed the following requests for judicial notice:

8        Defendant Cantil-Sakauye seeks judicial notice of the following documents (Dkt. No. 25,

9    "DRJN"):  (i) Ex. A, September 10, 2013 and September 13, 2013 traffic citations; (ii) Ex. B,

10   December 16, 2013 Minute Order by Commissioner Philip Stanger; (iii) Ex. C, January 30, 2014

11   Minute Order by Judge Lloyd Connelly; (iv) Ex. D, February 20, 2014 Minute Order by Judge

12   Peter S. Helfer; (v) Ex. E, February 21, 2014 Notice of Appeal; (vi) Ex. F, July 8, 2015 Minute

13   Order by Judge Jennifer K. Rockwell; (vii) Ex. G, Notice of Decision by Judge Connelly, issued

14   on February 8, 2017; (viii) Ex. H, Notice of Decision by Judge Connelly, issued on March 14,

15   2017.[1]  Plaintiff objects to DRJN based on his claim that these underlying court proceedings were

16   conducted in violation of his constitutional rights.  Despite plaintiff's objection, the Court finds

17   that such documents are subject to judicial notice as documents representing proceedings in other

18   courts.  *See United States ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d

19   244, 248 (9th Cir. 1992); *see also* Fed. R. Evid. 201(b)(1), (2) (documents whose accuracy is not

20   subject to reasonable dispute and can be readily verified).  Accordingly, the Court **GRANTS**

21   defendants' request for judicial notice.

22       Plaintiff seeks judicial notice of the following documents (Dkt. Nos. 33, 34, "PRJN"):[2]  (i)

23   Ex. 1, Excerpt of Reporter's Transcript in plaintiff's traffic court case; (ii) Ex. 2, U.S. Department

24   of Justice Civil Rights Division "Dear Colleague Letter," dated March 14, 2016; (iii) Ex. 3,

---

26       [1] Defendant Shiomoto joins in defendant Cantil-Sakauye's request for judicial notice.
(Dkt. No. 30.)

28       [2] Plaintiff filed a declaration attaching several exhibits (Dkt. No. 33) in addition to his
formal request for judicial notice at Docket Number 34.  Because of plaintiff's *pro se* status, the
Court will deem plaintiff's filing at Docket Number 33 as part of his request for judicial notice.

California Judges Bench Guide 83; (iv) Ex. 4, State of California Manual of State Funds; (v) Ex. 5, California Judicial Council 2012–2013 Total Revenues; (vi) Ex. 6, Conference of State Court Administrators 2011–2012 Policy Paper; (vii) Ex. 7, California Rule of Court 4.335; (viii) Ex. 8, Plaintiff's Ex Parte Application for Modification of Sentence Based on Ability to Pay, dated February 7, 2017; (ix) Ex. 9, February 8, 2017 Order on Plaintiff's Ex Parte Application; (x) Ex. 10, February 8, 2017 letter from defense counsel; (xi) Ex. 11, January 10, 2017 Judicial Council of California Memorandum; (xii); Ex. 12, California Senate Bill 185, dated March 20, 2017; (xiii) Ex. 13, Senate Committee on Transportation and Housing Hearing, dated April 4, 2017; (xiv) Ex. 14, July 8, 2015 Minute Order by Commissioner Brody; (xv) Ex. 15, United States Statement of Interest, *Stinnie v. Holcomb*, No. 16-CV-00044 (W.D. Va.); (xvi) and Ex. 16, Article, Bill Advances Gov. Brown's Plan to Stop Suspending Licenses for Traffic Debt (Jan. 25, 2017).[3]  The Court finds that Exhibits 1–9 and 11–15 are proper subjects for judicial notice.  *See* Fed. R. Evid. 201(b)(1).  Accordingly, the Court **GRANTS** plaintiff's request for judicial notice of those documents only.

## II.    BACKGROUND

The case at bar relates to two traffic citations received by plaintiff, which subsequently led to the suspension of his driver's license and the imposition of civil penalties.  Specifically:

Plaintiff received two traffic citations, one on September 10, 2013 and another on September 13, 2013.  (DRJN Ex. A.)  Plaintiff pled not guilty to both citations and proceeded to trial, which was held on February 20, 2014.  (*Id.* Exs. B, C, D.)  Plaintiff was found guilty and ordered to pay a fine for both citations.  (*Id.* Ex. D.)  Plaintiff appealed this judgment to the Appellate Division of the California Superior Court.  (*Id.* Ex. E.)  Subsequently, plaintiff also filed a petition for certiorari to the California Supreme Court, and then to the United States Supreme Court, both of which were denied.  *See* Docket, *Herships v. Sup. Ct. of Calif.*, No. 13-9198 (2014).  After the denial of his appeals, on July 8, 2015, the Superior Court found plaintiff to be in violation of California Penal Code section 1214.1(a) for failing to pay his traffic fines, and

---

[3] Exhibits 17, 18, and 19 attached to PRJN are duplicative of Exhibits 2, 6, and 1, respectively.

3

1    imposed civil sanctions and penalties including the suspension of plaintiff's driver's license.

2    (DRJN Ex. F.)

3         Plaintiff then filed this action on January 30, 2017, alleging that the Superior Court

4    imposed fines and then ordered the suspension of his driver's license in violation of his

5    constitutional rights.  Plaintiff alleges that the state's budget allocation scheme for the courts

6    creates a structural conflict of interest that deprived him of his right to a fair and impartial trier of

7    fact.  Specifically, plaintiff challenges California Government Codes 68085 and 77003, which

8    provide thus:  "There is hereby established the Trial Court Trust Fund, the proceeds of which shall

9    be apportioned for the purposes authorized in this section, including apportionment to the trial

10   courts to fund trial court operations, as defined in Section 77003."  Cal. Gov. Code § 68086.

11   Section 77003, in turn, defines trial court operations as, among others, "[s]alaries benefits, and

12   public agency retirement contributions for superior court judges and for subordinate judicial

13   officers."  On such bases, plaintiff alleges that trial court judges are motivated to find defendants

14   guilty because such fees are used to fund the trial court itself.  (FAC ¶ 22.)  Plaintiff further alleges

15   that such fines and penalties were imposed without providing plaintiff with an ability to pay

16   hearing.

17        In connection with the filing of his original complaint, plaintiff also filed a motion for a

18   temporary restraining order asking that the Court order defendants to reinstate plaintiff's driver's

19   license.  The Court initially abstained from ruling on plaintiff's motion, requiring the parties to

20   meet and confer and instructing defendants to assist plaintiff in filing a request for modification of

21   his sentence based on his claim that he is unable to pay the fines.  (Dkt. No. 9.)  On February 7,

22   2017, plaintiff filed with the Superior Court an Ex Parte Application for Modification of Sentence

23   Based on Ability to Pay.  (PRJN Ex. 8.)  The Superior Court provided the following order on

24   February 8, 2017 in response to plaintiff's submission:

25        The Court has received and filed your application for Modification of Sentence
          based on Ability to Pay.  The Court is, however, unable to process and evaluate
26        the application because it is not complete.  Specifically, you do not provide
          medical verification from a medical provider regarding your physical limitation
27        and inability to do community service.  This proof, for example, could be in the
          form of copies of key documents from your medical records or an opinion from a
28

4

treating or evaluating physician or nurse. The Court in evaluating a fine reduction, fine elimination or reduced payments will consider whether any portion of the fine obligation can or should be satisfied by completing community service. The Court has available a variety of benign/chair easy community service options available through roughly 100 different reputable non-profit charitable organizations in Sacramento. When the application is complete with the information regarding your inability to do community service, the Court will quickly rule on the entirety of your request. In the absence of receiving additional information from you on this issue, the Court will rule in 30 days based on the information you have provided and will consider benign/chair easy community service as a possible option.

(PRJN Ex. 9.)

On February 13, 2017, plaintiff filed an amended motion for a temporary restraining order, arguing, among others, that defendants "refused to make a determination on the application" and that defendants had "no intentions of providing an 'ability to pay determination.'" Dkt. No. 10 at 8.) On February 15, 2017, the Court denied plaintiff's motion for a temporary restraining order. On March 14, 2017, the Superior Court provided the following order:

Defendant has asserted orally to court employees that he is unable to complete community service due to physical limitations. Previous order dated February 8, 2017 provided defendant with notice that medical documentation to substantiate his inability to complete community service was required and 30 days in which to provide this documentation. To date, the documentation has not been received and, therefore, the defendant's application remains incomplete. The defendant may reapply when medical documentation to substantiate his inability to complete community service is provided or he advises the Court he no longer asserts that he is unable to complete community service.

(DRJN Ex. H.)

Based on the above allegations and background, plaintiff requests that the Court order the DMV to reinstate his driver's license, enjoin defendants from suspending licenses prior to an ability to pay hearing and from imposing penalties and fines not related to addressing public safety, and declare that defendants' policies and practices violate his rights under the Constitution and laws of the United States by depriving him of a fair and impartial decision maker in traffic court proceedings. The Court construes plaintiff's complaint as alleging two broad categories of wrongs: first, that the initial guilty verdict in 2014 and subsequent suspension of his license were constitutionally invalid and second, that the state courts have improperly denied his most recent

5

1  ability-to-pay application.  The Court addresses defendants' motions and plaintiff's FAC

2  accordingly.

3  **III.    LEGAL FRAMEWORK**

4      A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter

5  jurisdiction.  "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause

6  lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins.Co. of Am.*, 511 U.S. 375,

7  377 (1994).  The party invoking the jurisdiction of the federal court bears the burden of

8  establishing that the court has the requisite subject matter jurisdiction to grant the relief requested.

9  *Id*.  A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d

10  1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the

11  allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

12  The challenger asserts that the allegations in the complaint are insufficient "on their face" to

13  invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

14  To resolve this challenge, the court assumes the allegations in the complaint are true and draws all

15  reasonable inferences in favor of the party opposing dismissal.  *See Wolfe*, 392 F.3d at 362.

16  Additionally, when all federal claims are dismissed before trial, the Ninth Circuit has held that

17  "pendent state claims also should be dismissed."  *Jones v. Cmty. Redevelopment Agency of the*

18  *City of Los Angeles*, 733 F.2d 646, 651 (9th Cir. 1984).

19  **IV.    DISCUSSION**

20      As previously discussed, plaintiff appears to be seeking both retroactive relief based on the

21  guilty verdict rendered against him in traffic court and the subsequent suspension of his driver's

22  license and prospective relief related to ongoing proceedings concerning his ex parte application

23  for a modification of his sentence based on his ability to pay.  Defendants argue that each of those

24  claims is barred by certain judicial and constitutional doctrines that divest this Court of subject

25  matter jurisdiction over the action.  The Court addresses each below.

26

27

28

6

United States District Court
Northern District of California

### A. *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine precludes this Court's jurisdiction as to plaintiff's claims regarding the state court's order finding him guilty of the traffic violations and subsequent order suspending his license and imposing civil penalties for failure to pay his fines.

The *Rooker-Feldman* doctrine provides that federal district courts lack subject matter jurisdiction to exercise appellate review over final state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) ("Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for [constitutional] errors . . . ."); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983) ("As we have noted . . . a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court."). "If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "[T]he United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings." *Id.* (quoting *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986). The Supreme Court has further explained that the "*Rooker-Feldman* [doctrine] . . . is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Plaintiff argues that the *Rooker-Feldman* doctrine should not apply here because he is challenging the system of funding established by California Government Code sections 68085 and 77003, which creates judicial bias against traffic court defendants. Plaintiff primarily relies on *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013). In *Bell*, the Ninth Circuit held thus:

> The court erred by dismissing Plaintiffs' claims for retrospective relief under the *Rooker-Feldman* doctrine. Although Plaintiffs sought relief designed to remedy

7

1
2
3
4

      injuries from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself. Rather, Plaintiffs assert 'as a legal wrong an allegedly illegal act . . . by an adverse party"—the city's allegedly unconstitutional enforcement of the Ordinances. Without a direct challenge to a state court's factual or legal conclusion, Plaintiffs' suit is not a forbidden de facto appeal, and *Rooker-Feldman* is inapplicable.

5    *Id.* at 897 (internal citations omitted).

6        Plaintiff does not persuade. In *Bell*, the Ninth Circuit drew a distinction between an attack

7    on the city's enforcement of the ordinance, which resulted in an adverse judgment against

8    plaintiff, and an attack on the judgment itself. The latter would be barred by *Rooker-Feldman*, but

9    with regard to the former, no error exists as to the judgment save for the fact that it is applying the

10    enforcement of an ordinance plaintiffs claimed was unconstitutional. *Id.* at 897. By contrast, here,

11    plaintiff essentially claims that the judgment against him is deficient because the judge who

12    rendered the opinion had a financial incentive to find him guilty and was therefore not impartial.

13    Such remains a de facto appeal of the state court's judgment against plaintiff. *See Sepehry-Fard v.*

14    *Dep't Stores Nat'l Bank*, No. 13-CV-3131-WHO, 2013 WL 5537126, at \*4 n.6 (N.D. Cal. Oct. 4,

15    2013) (applying *Rooker-Feldman* even where plaintiff alleged that judicial defendants were biased

16    and had financial conflicts); *Greene v. Hayward*, No. 06-CV-231-OWW, 2006 WL 1376879, \*5

17    (E.D. Cal. May 17, 2006) ("Plaintiff's claim that the judge's bias against him and in favor of

18    Defendants eventuated in a legally erroneous judgment is a de facto appeal like that rejected by the

19    Supreme Court in the opinion which originated the *Rooker-Feldman* doctrine.").

20        Thus, plaintiff's claims related to the state court's judgment against him and subsequent

21    suspension of his driver's license are barred by the *Rooker-Feldman* doctrine. Accordingly, the

22    Court **GRANTS** defendants' motions to dismiss the same.

23        **B.**    *Younger* **Abstention**

24        With respect to plaintiff's claims regarding his recent application for modification of his

25    sentence and reinstatement of his driver's license, defendants argue that the same should be

26    dismissed pursuant to the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37, 43–54

27    (1971) (holding that federal courts cannot enjoin pending state criminal proceedings); *see also*

28    *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (extending *Younger* to civil enforcement

1    actions "akin to" criminal proceedings); *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (extending

2    *Younger* to suits challenging the "core of the administration of a State's judicial system").

3    In civil cases, "*Younger* abstention is appropriate only when the state proceedings: (1) are

4    ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the

5    orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants

6    to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Compensation Insurance Fund*,

7    754 F.3d 754, 759 (9th Cir. 2014). The Ninth Circuit has also identified a fourth requirement:

8    "The requested relief must seek to enjoin—or have the practical effect of enjoining—ongoing state

9    proceedings." *Id.* (quoting *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir.

10   2007)). "Each element must be satisfied, and the date for determining whether *Younger* applies is

11   the date the federal action is filed." *Id.* (internal citations omitted). Where a district court finds

12   *Younger* abstention appropriate as to a request for declaratory or injunctive relief, the Court may

13   not retain jurisdiction and must dismiss the action. *Columbia Basin Apartment Ass'n v. City of*

14   *Pasco*, 268 F.3d 791, 799 (9th Cir. 2001).

15   Here, defendants argue that each element is satisfied. The Court agrees: First, state

16   proceedings are ongoing and a final determination has not yet been made on plaintiff's

17   application. Contrary to plaintiff's claim that the Superior Court rejected his application without

18   an ability-to-pay hearing, the Superior Court, rather, explained that plaintiff's application was

19   incomplete and invited plaintiff to refile the application with the required additional medical

20   documentation, else inform the court that he is no longer pursuing such line of argument for

21   modification of his sentence. (*See supra*.) Second, the pending state action on his ex parte

22   application necessarily implicates important state interests. Any decision on his application would

23   necessarily impact the Superior Court's ability to enforce its prior judgment suspending plaintiff's

24   license and assessing fines and civil penalties, and would have an effect on the state's licensing

25   procedures. Third, no reason exists that would bar the Superior Court from addressing plaintiff's

26   due process claims. And finally, plaintiff's requested relief, the reinstatement of his license and

27   enjoining the collection of his penalty assessments and fines would not only violate the *Rooker-*

28

9

1   *Feldman* doctrine as discussed above, but also effectively enjoin the pending state court

2   proceedings on plaintiff's ex parte application for modification of his sentence.

3       Thus, the Court finds that *Younger* abstention applies here as to plaintiff's claims related to

4   his pending ex parte application for modification of his sentence.  Accordingly, the Court **GRANTS**

5   defendants' motions to dismiss such claims.[4]

6   **V.     CONCLUSION**

7       For the foregoing reasons, the Court **DISMISSES WITH PREJUDICE** plaintiff's action.  Given

8   that the Court lacks jurisdiction based on the aforementioned doctrines, the Court finds that any

9   amendments would be futile.  Thus, the Court further **ORDERS** the Clerk to close the file.

10      This Order terminates Docket Numbers 23 and 29.

11      **IT IS SO ORDERED.**

12

13  Dated: May 26, 2017

14                                              **YVONNE GONZALEZ ROGERS**
                                                **UNITED STATES DISTRICT COURT JUDGE**

15

16

17      [4] Additionally, Eleventh Amendment immunity also bars plaintiff's suit against
    defendants Cantil-Sakauye and Shiomoto for any retrospective relief or claims for damages, as

18  they are being sued only in their official capacities. *See Atascadero State Hosp. v. Scanlon*, 473
    U.S. 234, 237–38 (1985) (explaining that the Eleventh Amendment bars from the federal courts
    suits against a state by its own citizens, citizens of another state, or citizens or subjects of any

19  foreign states), *abrogated by statute on other grounds as recognized by Lane v. Pena*, 518 U.S.
    187 (1996); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (holding that a state

20  cannot be sued regardless of relief sought unless the state has waived its immunity or Congress
    has overridden it); *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of

21  California has not waived its Eleventh Amendment immunity with respect to claims brought under
    [section] 1983 in federal court, and the Supreme Court has held that [section] 1983 was not

22  intended to abrogate a State's Eleventh Amendment immunity." (internal citations omitted));
    *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 & n.10 (9th Cir.

23  1987) (Eleventh Amendment bars suit against Superior Court of State of California regardless of
    relief sought); *Faurot v. Barton*, No. 06-CV-1005-SMS, 2007 WL 3125078, at *4 (E.D. Cal. Oct.

24  24, 2007) ("A suit against California's Judicial Council is a suit against a state agency."); *Novin v.
    Fong*, No. 14-CV-1218-LHK, 2014 WL 6956923, at *7 (N.D. Cal. Dec. 8, 2014) (finding that

25  Eleventh Amendment immunity bars suit against California DMV); *Crockett v. California*, No.
    12-CV-1741-DOC, 2012 WL 2153801, at *4 (C.D. Cal. May 22, 2012) (same).  The Eleventh

26  Amendment does not bar claims against state officials for prospective injunctive and declaratory
    relief pursuant to section 1983. *See Wolfe*, 392 F.3d at 364.  However, to the extent plaintiff has

27  such claims, those claims are barred by either the *Rooker-Feldman* doctrine or *Younger* abstention
    in these circumstances, as previously discussed.  Because all of plaintiff's claims are barred by

28  these doctrines, the Court need not address defendants' other grounds for dismissal.